UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                        Case number 06-13776

PHILIP G. MORAWSKI,                    Honorable Julian Abele Cook, Jr.

        Defendant.

ORDER

On August 25, 2006, the Plaintiff, the United States of America ("the Government"), filed a lawsuit against the Defendant, Philip G. Morawski, alleging that he was in default on his mortgage and security commitments to the Government in the amount of $524,527.66. On March 13, 2008, the Government filed a motion for the entry of a summary judgment, contending that there are no genuine issues of a material fact which remain to be resolved in this litigation. On July 7, 2008, the Court conducted a hearing on the pending motion, during which the Government and Morawski, who appeared *pro se*, voiced arguments in support of their respective positions. For the reasons that have been outlined below, the Government's motion for summary judgment will be granted.

I.

On December 22, 1994, the Government extended three promissory notes to Morawski who expressed his intention to use these loans to establish a dairy farm. These promissory notes, all of which were issued to him through the Farm Services Agency ("FSA"), were distinguished in the

1

following manner: (1) $26,830 as an operating loan that would be payable over a period of 18 months in three installments, (2) $173,170 for equipment, cattle and additional operating funds, payable over a seven year span, and (3) $198,000 for the purchase of a farm, a sum to be amortized over a forty year term. (Pl.'s Ex. i at 2-3.) All of these loan agreements contained the same language which described the parties' respective contractual rights in the event of a failure by either party to satisfy their obligations. In essence, and as it applies to the circumstances under current review by this Court, the contract provided that the Government would be entitled to (1) accelerate the loans and demand their immediate payment, and (2) foreclose on anything purchased by Morawski with the borrowed funds. (Pl.'s Compl., Ex. F & G.)[1] All three of the promissory notes contained the following provision regarding Morawski's failure to satisfy his financial obligations to the Government:

> **DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.
>
> **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

(Pl.'s Compl., Ex. C, D, and E.) (Emphasis in original.)

After Morawski's loans became delinquent in January 1996, he began a series of efforts, all of which were unsuccessful, to obtain financing that would enable him to save his interests in

---

[1]As security for the loans, Morawski extended (1) a mortgage on his farm real estate, and (2) assigned a security interest in his chattel and crops to the Government. (Pl.'s Compl., Ex. F and G.) He also executed two additional security agreements on August 21, 1996 and February 11, 1998, both of which granted security interests in his chattel and livestock to the FSA. (Pl.'s Compl., Ex. H and I.)

the dairy farm.[2] On August 10, 2004, the FSA, relying upon the terms of the parties' mortgages, accelerated Morawski's loans. Two years later (August 25, 2006), this lawsuit was commenced by the Government, in which it alleged that (1) Morawski had defaulted on his mortgage and security commitments, and (2) the amount of his indebtedness was $524,527.66.

II.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must demonstrate the absence of a genuine issue of material

---

[2]Shortly after he became delinquent in his obligations to the Government in January 1996, Morawski was notified by the FSA of his contractual rights regarding loan servicing and disaster relief programs. Thereafter, he applied for the disaster set-aside program for the 1996 crop year, but his application was denied. Although Morawski asked the FSA to reconsider its decision, his request was denied. (Pl.'s Ex. i, ¶¶ 3-6.) He also applied for loan servicing, but this application was also denied on January 14, 1997. Thereafter, a mediation, which had been convened on March 5, 1997 to address Morawski's challenge to denial of loan servicing and disaster relief, resulted in another rejection for financial assistance. Morawski appealed these denials of his applications for loan servicing and disaster relief to the USDA National Appeal Division (NAD). A hearing before a NAD hearing officer on May 14, 1997 produced the same results; namely, the FSA's decision to deny both disaster relief and primary loan servicing was upheld in a decision dated June 12, 1997. (Pl.'s Ex i, Tab GG.) There followed a request by Morawski for a review of the decision by the Director of NAD, who upheld the decision in a Director Review Determination dated August 25, 1997. (Pl.'s Ex i, Tab HH.) Morawski did not seek judicial review of this decision.

Between1995 and November 2001, Morawski filed a number of discrimination complaints with the USDA Office of Civil Rights, alleging that the FSA had discriminated against him regarding the servicing of his loans. The documents that he had filed were consolidated into four complaints, and heard in a proceeding before an administrative law judge who dismissed the complaints on October 29, 2003. (Pl.'s Ex. i, Tab II.) This dismissal by the administrative law judge was reviewed by an Assistant Secretary for Civil Rights who issued a Notice of Final Determination on January 22, 2004, and dismissed Morawski's complaints, adopting the reasons set forth in the administrative law judge's determination. (Pl.'s Ex i, Tab KK.) On September 13, 2004, Morawski sought protection under Chapter 13 of the Bankruptcy Code.

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This can be done simply by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party satisfies its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elect. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden on the nonmovant is such that if the proffered evidence is "merely colorable" or "not significantly probative," then a summary judgment may be entered in favor of the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). When determining the materiality of an issue, the substantive law - without regard to evidentiary requirements - governs "which facts are critical and which are irrelevant." *Id.* at 248.

III.

In order to be successful in obtaining a judgment against Morawski in this litigation, the Government must establish that (1) he executed the notes which form the bases for its claim, (2) it is the current owner or holder of these notes, and (3) the notes are now in default. *U.S. v. Lawrence*, 2007 WL 1675305, 2 (E.D. Mich. 2007). Morawski does not disagree with the Government's contention that (1) he signed the three notes, all of which contain an unambiguous explanation of the legal ramifications of his failure to pay any of the amounts that are due under the loans. Moreover, in his declaration, FSA Farm Loan Specialist, Tom George, asserted that the Government is the present holder of the notes. (Pl.'s Ex. i at ¶ 2.) Significantly, Morawski has not challenged the accuracy of George's declaration.

Finally, the current default status of the three loans has been established by the FSA's

4

Certificate of Indebtedness, as well as the numerous letters from this federal agency which advised Morawski that his loans were delinquent, along with its right to exercise the option to accelerate them. (Pl.'s Ex. i & ii.) In response, Morawski – without providing any counter-evidence or authority in support of his position on this issue – contends that the terms of these mortgages and promissory notes are illegal. A review of the terms and conditions within the now-challenged mortgages and notes reveals a "boilerplate" set of obligations and rules, none of which appear to be unusual in their language, unconscionable in its terms or inappropriate in any way.

Therefore, the Court concludes that there are no genuine issues of a material fact which address Morawski's obligations under the promissory notes. Accordingly, the Government is entitled to a judgment that will direct Morawski to pay the balance due under the promissory notes.

IV.

The Government has also asked the Court enter to a summary judgment in its favor on the issue of whether it has the right to foreclose on the real estate and personal property which served as a security for Morawski's now-defaulted loan obligations. The Government is entitled to a summary judgment on this issue if it can prove the existence of an obligation that is secured by a mortgage in default. *United States v. Fugle*, 2003 WL 251948 (W.D.N.Y. 2003).

Although the FSA has submitted documents[3] which appear to have satisfied the

---

[3] The existence of an obligation has been established by the promissory notes. (Pl.'s Compl., Ex. C, D, & E.) The fact that Morawski's obligation is secured by a mortgage was established by the mortgage and security documents. (Pl.'s Compl., Ex. F & G.) His default on that obligation was established by the Certificate of Indebtedness and the related correspondence. (Pl.'s Ex. ii, Tab D; Pl.'s Ex. i, Tab AA, BB, CC, DD, EE, LL.)

5

Government's burdens on this issue, Morawski insists that the proffered mortgage documents are invalid because there is no date next to the signatures. Although there is no date next to the signatures, both documents are clearly dated. Moreover, it is widely accepted that the contract law tends to shy away from such overly formalistic requirements for a multitude of reasons, not the least of which is to promote an ease of transactions between the parties. *See, e.g.*Restatement (Second) of Contracts, § 131 (1981). Therefore, inasmuch as the existence of a defaulted obligation that has been secured by a mortgage is not in dispute, the Government is entitled to foreclose on the property which secured the loans to Morawski.

V.

In his response to the Government's complaint, Morawski has raised several counterclaims and a variety of affirmative defenses. Although many of Morawski's pleadings are extremely difficult to fully understand, it appears that his defenses principally relate to claims that the FSA (1) failed to provide him with loan servicing options and disaster assistance, and (2) violated its own practices and procedures when it accelerated his loans and brought this action against him. In making this argument, Morawski claims that he has a civil rights complaint that is now pending with the FSA. Further, he asserts that the FSA's own procedures specifically prohibit it from accelerating his loans while a complaint remains unresolved.

Contrary to Morawski's assertions, the Government's documents note that (1) on November 12, 1996, he was advised of his ineligibility to receive disaster set-aside assistance by the FSA, and (2) on January 14, 1997, this federal agency notified him that he was ineligible to receive primary loan servicing. The record in this legal proceeding also indicates that he actively pursued an administrative review as well as the appellate process which challenged both of these decisions.

On August 25, 1997, the Director of NAD issued his Director Review Determinations which, in essence, upheld the decisions by the FSA to deny Morawski's request for primary loan servicing and disaster set-aside assistance.

Morawski could have sought a judicial review of the final determination by the NAD pursuant to Administrative Procedure Act, 5 U.S.C. §§ 701 – 706, but he chose not to do so. A judicial review of these determinations is now time barred by 28 U.S.C. § 2401, which requires that a civil action be brought against the United States of America within six years of the date that the right of action first accrues. His right to sue accrued not later than August 25, 1997. Thus, any claim that he may have had is no longer valid.

Morawski also claims that the acceleration of his debt and the subsequent filing of this action violated the policies of the FSA which allegedly prohibited the commencement of any action against a debtor while a discrimination complaint is pending. A recently enacted provision of the 2008 Farm Bill, HR 6142, Pub.L. No. 110-246, contains a moratorium on the acceleration of loans and foreclosure proceedings against farmer borrowers who have pending program discrimination claims. The 2008 Farm Bill, which was enacted on June 18, 2008, provides, in pertinent part, that:

> [E]ffective beginning on the date of the enactment of this subsection, there shall be in effect a moratorium, with respect to farmer program loans . . . on all acceleration and foreclosure proceedings instituted by the Department of Agriculture against any farmer or rancher who–
> (A) has pending against the Department a claim of program discrimination that is accepted by the Department as valid; or
> (B) files a claim of program discrimination that is accepted by the Department as valid.

Sec. 14002, subsection (b).

The record in this cause indicates that between 1995 and 2001, Morawski filed a number of discrimination complaints and documents with the USDA Office of Civil Rights, all of which

7

were consolidated into four complaints and heard before an administrative law judge who dismissed the complaints on October 29, 2003. (Pl.'s Ex i., Tab II.) This decision was subsequently reviewed by an Assistant Secretary for Civil Rights who issued a Notice of Final Determination on January 22, 2004 which dismissed Morawski's complaints and, in so doing, adopted the reasoning of the administrative law judge. (Pl.'s Ex i, Tab KK.) Morawski did not seek a timely judicial review of the final determination by the USDA Assistant Secretary for Civil Rights. Rather, he merely reasserted his now-dismissed claims of discrimination by filing a set of new documents with the USDA. However, none of these complaints were accepted as having validity by the USDA, noting that Morawski had raised the same claims which had been addressed and resolved in its 2004 determination. Inasmuch as Morawski has failed to show that he has a currently pending program discrimination claim against the USDA, he cannot invoke this federal agency's policy as a defense against foreclosure action.

VI.

For the reasons that have been set forth above, the Government's summary judgment motion must be, and is, granted in its entirety. In addition, all counterclaims that Morawski has raised are dismissed. Accordingly, the Court orders an accounting of the sums due on the three promissory notes signed by Morawski. Furthermore, the Court determines that the Government (1) is authorized to foreclose on the real estate mortgage and security agreements in personal property which secured the indebtedness, (2) may sell the covered real estate and personal property at public sale and apply the proceeds of such a sale to Morawski's indebtedness, and (3) is entitled to a personal judgment against him in the amount of any remaining deficiency.

IT IS SO ORDERED.

Dated: August 12, 2008                  s/ Julian Abele Cook, Jr.
       Detroit, Michigan                JULIAN ABELE COOK, JR.
                                       United States District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participant Philip Morawski, 2428 N. Van Dyke, Decker, MI 48426 on August 12, 2008.

                                                           s/ Kay Alford
                                                           Case Manager